IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    )
                            )
        vs.                 )        Criminal No. 09-303
                            )        See Civil Action No. 12-389
OTTO HARRIS,                )
                            )
        Defendant/petitioner.  )


MEMORANDUM OPINION

BLOCH, District J.

    Petitioner, on March 28, 2012, filed a pro se Motion under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a
Person in Federal Custody and memorandum in support thereof (Doc.
No. 136).  Petitioner supplemented his motion on April 24, 2012
(Doc. No. 140) and October 3, 2012 (Doc. No. 144).  Upon
consideration of this motion, and the supplements thereto, and
upon further consideration of the Government's response to
Petitioner's motion (Doc. No. 142), filed on May 16, 2012, and
Petitioner's rejoinder to the Government's response (Doc. No.
143), filed on June 5, 2012, the Court denies Petitioner's motion
for the reasons set forth below.

## I. **Background**

On November 12, 2009, an indictment was returned by the grand jury charging Petitioner with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). In connection with this charge, Petitioner, on August 23, 2010, filed several pretrial motions, including a Motion to Suppress Evidence and Statements (Doc. No. 32) and a Motion to Dismiss the Indictment on Jurisdictional Grounds (Doc. No. 33). A pretrial conference was held on September 29, 2010, at which time the Court denied the motion to dismiss the indictment and heard evidence regarding the suppression motion. After the parties had filed post-hearing briefs, the Court issued an order denying the suppression motion on November 9, 2010 (Doc. No. 56).

Petitioner proceeded to trial, and, on December 1, 2010, the jury found Petitioner guilty at Count One. Subsequently, the probation office prepared a Presentence Investigation Report ("PIR"), in which the probation officer determined that Petitioner was subject to the enhanced penalty provisions of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), based on his prior convictions. Petitioner's counsel objected to this finding (Doc. No. 96), but, on March 22, 2011, the Court issued its Tentative Findings and Rulings Concerning Disputed Facts or Factors (Doc. No. 101), in which the Court found that the enhanced penalty provisions of Section 924(e) did, in fact, apply. Petitioner's

counsel also filed a lengthy Memorandum in Aid of Sentencing (Doc. No. 100), again arguing that Petitioner should not be subject to the statutory range set forth in Section 924(e) and raising various grounds for a variance. On March 24, 2011, the Court sentenced Petitioner to a term of imprisonment of 188 months, which was the bottom of the sentencing range recommended by the United States Sentencing Guidelines, to be followed by five years' supervised release.

Petitioner subsequently appealed and challenged his conviction and sentence, arguing that the indictment should be dismissed on jurisdictional grounds because Section 922(g)(1) violated the Commerce Clause of the United States Constitution, both on its face and as applied to him, and that the Court erred in sentencing him pursuant to the ACCA. On January 27, 2012, the Third Circuit Court of Appeals affirmed Petitioner's conviction and sentence. There is no indication that Petitioner sought a writ of certiorari before the United States Supreme Court.

On March 28, 2012, Petitioner filed his motion pursuant to 28 U.S.C. § 2255. On March 29, 2012, in accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), the Court issued an Order advising Petitioner that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits consideration of a second or successive habeas petition absent certification from the Third Circuit that certain very specific and rare circumstances

exist. With that in mind, Petitioner was ordered to advise the Court as to how he wished to proceed in this case, specifically, whether he wished to have his motion ruled upon as filed and lose the ability to file successive petitions absent Third Circuit certification, or whether he wished to withdraw the motion and file one all-inclusive Section 2255 petition within the one-year statutory period of the AEDPA. Petitioner responded by filing his "Supplemental Memorandum and Addendum to Motion under § 2255 by Incorporating the Inclusion and Addition of Recent Adjudicated Law" (Doc. No. 140). He subsequently filed a second supplement (Doc. No. 144), on October 3, 2012. The Court will address the claims raised in Petitioner's motion and supplements below.

## II.  **Discussion**

Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999). However, even a pro se plaintiff must be able to prove a "set of facts in support of his claim which would entitle him to relief." Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

As noted, Petitioner brings his pro se motion pursuant to Section 2255. This statute permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed

4

in violation of the Constitution or laws of the United States...[to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

Petitioner claims he is entitled to relief under Section 2255 on the basis of ineffective assistance of counsel. A defendant seeking relief under Section 2255 on the ground of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms;' and (2) the defendant suffered prejudice as a result - that is, there is a reasonable probability that, but for the counsel's deficient performance, the result of the proceeding would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

> In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of

5

> reasonable professional assistance; that is,
> the defendant must overcome the presumption
> that, under the circumstances, the challenged
> action might be considered sound trial
> strategy.

Sistrunk, 96 F.3d at 670 (citing Strickland, 466 U.S. at 689-90)

(internal quotation marks and citations omitted). "It is only the

rare claim of ineffective assistance of counsel that should

succeed under the properly deferential standard to be applied in

scrutinizing counsel's performance." United States v. Kauffman,

109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray,

878 F.2d 702, 711 (3d Cir. 1989)).

It should be noted that, although Petitioner generally is

careful to portray his claims as claims of ineffective assistance

of counsel, some of his arguments seem to be attempts at

convincing the Court to overturn certain legal rulings, both by

this Court and by the Third Circuit. The Court emphasizes that

absent exceptional circumstances, such as an intervening change in

the governing substantive law, absent here, Section 2255 generally

"may not be employed to relitigate questions which were raised and

considered on direct appeal." United States v. DeRewal, 10 F.3d

100, 105 n.4 (3d Cir. 1993) (citations omitted). See also United

States v. Pelullo, 305 Fed. Appx. 823, 827 (3d Cir. 2009); Davis

v. United States, 417 U.S. 333 (1974) (intervening change in

governing substantive law that makes petitioner's conviction and

punishment unlawful constitutes exceptional circumstances that

justify collateral relief under § 2255 after unsuccessful litigation of the issue on direct appeal). Accordingly, while the Court will address Petitioner's claims of ineffective assistance, it will not reconsider its own holdings or the holdings of the Third Circuit.

Although Petitioner's motion and brief identify three grounds on which he seeks relief, in his brief, he raises dozens of ways in which he alleges his counsel was constitutionally ineffective. Some of these are numbered, some are not, and many are duplicative. However, nowhere in his motion, his brief, or in either of his supplements does Petitioner raise any grounds on which relief is warranted.[1]

## A.   **Interstate Commerce Issues**

Many of Petitioner's claims contain complaints that counsel failed to do things that she did, in fact, do. What Petitioner is actually dissatisfied with is the result. For example, Petitioner takes issue with counsel's "fail[ure] to establish sound argument in the defense of establishing that weapon identified in criminal matter remained outside of the conditions set forth as having traveled in or affecting Interstate Commerce." Doc. No. 136-1 at 11. See also, e.g., id., Grounds 8-11, 13, second 18, and 33. He argues that his counsel failed to "effectively argue" the

---

[1]     Since the record itself conclusively shows that Petitioner is not entitled to relief, no evidentiary hearing is necessary.

applicability of United States v. Lopez, 514 U.S. 549 (1995), and

United States v. Gateward, 84 F.3d 670 (3d Cir. 1996), and that

she failed adequately to distinguish Scarborough v. United States,

431 U.S. 563 (1977), United States v. Singletary, 268 F.3d 196 (3d

Cir. 2001), and United States v. Shambry, 392 F.3d 631 (3d Cir.

2004), in arguing that the Commerce Clause did not permit him to

be convicted solely on the basis that the firearm he possessed had

passed in interstate commerce.  However, his attorney not only

sought to have the indictment dismissed on jurisdictional grounds,

she also argued for a jury instruction that would require more

than mere proof that the gun had crossed a state boundary.

        In the motion to dismiss the indictment, counsel relied on

Lopez, along with Jones v. United States, 529 U.S. 848 (2000), and

United States v. Morrison, 529 U.S. 598 (2000), better known as

the "Lopez Trilogy," in arguing that the Government's evidence

that the firearm at issue was manufactured in another state was

insufficient to establish that Petitioner's possession of the

firearm was in or affecting interstate commerce.  She contended,

therefore, that there was no subject matter jurisdiction for the

prosecution.  While recognizing that Third Circuit precedent,

including Gateward and Singletary, was contrary to her argument,

counsel addressed these cases and attempted to distinguish them.

She also argued that Scarborough, the case upon which Gateward

relied, would be overruled.  The Court rejected counsel's argument

in denying the motion.  In so finding, the Court indicated that it was following the clear precedent from the Supreme Court and the Third Circuit, specifically Scarborough, Gateward, Singletary, and Shambry, in finding 18 U.S.C. § 922(g) to be a valid exercise of Congress' authority under the Commerce Clause to regulate goods that have moved in interstate commerce, and further that proof that a firearm was manufactured in a state other than the state where the possession occurred is sufficient to establish that the possession was "in or affecting commerce," as required by Section 922(g).  This decision was affirmed by the Third Circuit.

Counsel also requested a jury instruction regarding the third element of the Government's case - that he possessed the firearm at issue in or affecting commerce.  Specifically, she argued that the Court should instruct the jury that, to prove that Petitioner's possession of the firearm was "in commerce," the Government must prove beyond a reasonable doubt that the possession was within the flow of interstate commerce, and that to prove that Petitioner possessed the firearm "affecting commerce," the Government must prove that the possession substantially affected commerce.  The Court rejected these proposed instructions, finding them contrary to Singletary and Shambry. Again, the Third Circuit affirmed this Court's ruling.[2]

---

[2]    Counsel also raised a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on the basis

Whatever Petitioner believes that counsel should have done differently in presenting these arguments is irrelevant, because the Court did not agree with these positions, and would not have done so regardless of how they were presented. As such, even assuming that Petitioner's attorney could have raised a stronger argument in support of the interstate commerce issues, and, again, Petitioner has failed to establish any such thing, there would be no prejudice, because there is no chance that the proceedings would have been different regardless of how the argument was presented.

## B.   **Application of the ACCA**

Petitioner also raises a number of concerns regarding counsel's arguments pertaining to the applicability of the ACCA.[3] See, e.g., Doc. No. 136-1, Grounds 6, 7, 12, and 36-37. As with the interstate commerce issue, counsel argued at great length that the ACCA should not apply, but the Court rejected her arguments. Counsel raised three primary arguments. First, she argued that the ACCA should not apply because Petitioner's prior convictions

---

that the Government failed to prove the interstate commerce element, which the Court denied.

[3]    At several points in his brief, Petitioner claims that he was sentenced as a career offender pursuant to USSG §§ 4B1.1 and 4B1.2. However, because the Court found that the ACCA applied, Petitioner was actually sentenced pursuant to USSG § 4B1.4. As such, the real issue is whether the Court properly applied the ACCA.

10

were not proved to a jury beyond a reasonable doubt.[4]  However, this Court was bound by the Supreme Court decision in <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998), which holds that the fact of a prior conviction does not have to be found by a jury beyond a reasonable doubt or admitted by a defendant to enhance a defendant's sentence.  <u>See also Apprendi v. New Jersey</u>, 530 U.S. 466 (2000); <u>United States v. Booker</u>, 543 U.S. 220 (2005).  Indeed, counsel admitted that she was raising this argument to preserve the issue for Supreme Court review or in the event that the Supreme Court overrules <u>Almendarez-Torres</u>.  The issue was, in fact, raised on appeal, and the Third Circuit rejected the argument.[5]

Petitioner's attorney further argued that designating Petitioner as an armed career criminal would require this Court to make findings that the crimes underlying his prior convictions were committed on occasions different from one another, which she

---

[4]    A person who violates 18 U.S.C. § 922(g) and who has three previous convictions for a violent felony or a serious drug offense, or both, committed on occasions different from one another, is subject to the enhanced penalty provisions of 18 U.S.C. § 924(e), which include a range of imprisonment of not less than 15 years and not more than life.

[5]    Petitioner raises a lengthy argument, citing <u>Appendi</u> and <u>Booker</u>, the relevance of which is not clear except to the extent he is attempting to argue that his prior convictions had to be proved beyond a reasonable doubt.  As discussed above, this argument is contrary to well-established Supreme Court precedent, including <u>Apprendi</u> and <u>Booker</u>.

11

argued went beyond proof of the mere fact of the prior

convictions.[6]  She further argued that, pursuant to Taylor v.

United States, 495 U.S. 575 (1990), and Shepard v. United States,

544 U.S. 13 (2005), this Court must impose a "strict" categorical

approach rather than a modified categorical approach, and,

therefore, that the Court was precluded from considering the

charging document in Case No. 200010668 in determining whether his

convictions at Counts One, Four, and Seven in that case were for

offenses committed on occasions different from one another.  As

the Court explained in its Tentative Findings, while it must, in

determining whether the ACCA applies, follow the categorical

approach pursuant to Taylor and Shepard, it may consider facts set

forth in the charging document, the terms of a plea agreement, a

transcript of the plea colloquy, or other comparable judicial

record.  See Shepard, 544 U.S. at 26.  The Court disagreed with

defense counsel that, under Taylor or Shepard, the "narrow range"

of cases in which a court may consider such judicial record

material is limited only to cases where the section of the statute

to which the criminal defendant pled guilty or was convicted is at

issue.  Instead, the Court explained that these cases make it

clear that a sentencing court may consider these records not to

---

[6]     While Petitioner, at times, implies that his prior
convictions were for simple possession of narcotics, it is clear
that his convictions at Counts One, Four, and Seven at Case No.
200010668 were each for delivery of a controlled substance.

determine the facts of the underlying case, but to determine the precise nature of the defendant's conviction.

The Court further explained that the case law makes it clear that Shepard-approved documents may be considered to determine whether prior predicate offenses were committed on occasions different from one another. In fact, the Third Circuit Court of Appeals, in United States v. Brown, 241 Fed. Appx. 890 (3d Cir. 2007), specifically stated that "[t]he Supreme Court has authorized district courts to look at certified records of convictions, statutory elements, charging documents or jury instructions to clarify such ambiguities" regarding whether prior predicate offenses were committed on occasions different from one another. Id. at 894-95 (citing Taylor and Shepard). This is consistent with the treatment of the issue by other circuit courts. See, e.g., United States v. Powell, 417 Fed. Appx. 926 (11th Cir. 2011); United States v. Hageon, 418 Fed. Appx. 295 (5th Cir. 2011); United States v. Russell, 402 Fed. Appx. 772 (4th Cir. 2010); United States v. Thomas, 572 F.3d 945 (D.C. Cir. 2009)(all relying on Taylor and/or Shepard in finding that approved judicial record material may be considered to determine whether prior offenses were committed on occasions different from one another in applying the ACCA). Again, the Third Circuit affirmed.

Petitioner's counsel cited no authority to the contrary, nor does Petitioner do so now. Accordingly, counsel raised the issue

13

Petitioner claims she should have raised, and the Court, based on precedent and its own reading of the relevant law, rejected the argument. Indeed, there is nothing counsel could have done differently to convince the Court otherwise. As such, Petitioner, even if he could demonstrate ineffectiveness, cannot show prejudice.

Finally, Petitioner's counsel argued that, because the charging document in Case No. 200010668 uses the term "on or about" a specific date in regard to the offenses charged at Counts One, Four, and Seven, the Court could not know the exact dates of the offenses and that, since the dates may be inexact, these counts may not be referring to crimes committed on occasions different from one another. The Court rejected the argument, emphasizing that the charging document expressly charged Counts One, Four, and Seven as separate violations committed on different dates not particularly close in time, that it did not use a broad range of dates, but rather a specific date, for each count, that each count alleged a discrete act, and that Petitioner pled guilty to these three counts as separate offenses. As with the other arguments regarding the application of the ACCA, the issue was raised and rejected.

In sum, counsel raised at least three separate arguments as to why the ACCA should not apply, two of which focused on the fact that three of the prior predicate convictions were charged in the

14

same charging document. Frankly, the arguments pushed the boundaries of the law, and the Court found no merit in these contentions. Even if Petitioner could find some fault in counsel's aggressive representation of him on this issue, he cannot establish that the Court would have ruled any differently, as the Court again reaffirms that there is no merit to any argument that the ACCA does not apply in this case.

### C.  **Suppression Issues**

Further, Petitioner raises various arguments regarding evidence that his counsel should have presented during the suppression hearing in this case. See, e.g., Doc. No. 136-1, Grounds 4, 18, second 19, 23, 26-30, 35, 38-44.[7] It should be noted that counsel did, in fact, file a motion seeking suppression of evidence and statements on essentially the same grounds cited by Petitioner. See Doc. No. 32. The Court held a hearing on the motion on September 29, 2010, and denied the motion after the parties had filed post-hearing briefs. Arguably, counsel did not present all of the evidence to which Petitioner refers at the

---

[7]    It is not entirely clear whether these evidentiary issues apply to actions counsel should have taken with respect to the suppression hearing or the trial. However, issues regarding the legality of the stop pertain to suppression issues, and not to the issue of whether Petitioner unlawfully possessed a firearm in or affecting commerce. Indeed, the Court refused to allow evidence pertaining to the legality of the stop at the trial, stating that "[t]he only issue we have here is, was the Defendant in possession of a gun that travelled in interstate commerce." Doc. No. 124 at 8.

hearing. However, even assuming Petitioner can establish that his counsel was ineffective in failing to present this evidence and testimony, he cannot establish that he was prejudiced as a result of counsel's actions.

First, most of Petitioner's arguments are in regard to evidence that he alleges would have established that Officer James Caterino's stop of his vehicle on June 1, 2009 was unlawful. However, Petitioner completely disregards the basis for the Court's denial of his suppression motion. The Court did not find that Officer Caterino's stop of Petitioner's vehicle was lawful or valid, or that it was based on any probable cause or reasonable suspicion. Indeed, the Court observed that it was unclear whether Officer Caterino had reasonable suspicion that Petitioner was driving without a valid driver's license, the basis on which he purported to pursue Petitioner's vehicle. The Court noted that Officer Caterino's prior knowledge of Petitioner's license suspension was nearly eight months old, and that the record was unclear as to whether West Homestead police ever confirmed that Petitioner's license was, indeed, suspended. See United States v. Laughrin, 438 F.3d 1245, 1247-48 (10th Cir. 2006). The Court further noted that Officer Caterino at no time relied on his belief that Petitioner had a firearm in his vehicle to justify the attempted traffic stop.

The Court's holding was based, instead, on the fact that

Petitioner abandoned the firearm prior to being seized. The Court
held that Petitioner clearly refused to submit to police authority
by failing to stop when directed to do so by Officer Caterino, not
only by failing to pull over his vehicle, but also by fleeing
after he had crashed his vehicle. The Court noted that for a
criminal defendant to be seized, for purposes of the Fourth
Amendment, police must apply physical force to the defendant, or,
where force is absent, the defendant must submit to a show of
police authority. "[I]f the police make a show of authority and
the suspect does not submit, there is no seizure." United States
v. Valentine, 232 F.3d 350, 358 (3d Cir. 2000) (citing California
v. Hodari D., 499 U.S. 621, 626 (1991); County of Sacramento v.
Lewis, 523 U.S. 833, 845 n.7 (1998); Abraham v. Raso, 183 F.3d
279, 291 (3d Cir. 1999)). As such, the Court found that it was
not until he was stopped by force, i.e., tasered, that Petitioner
was seized. By then, Officer Caterino had observed him with the
subject firearm and saw him throw it over a fence. Petitioner
therefore abandoned the firearm while being pursued and before he
was seized, and it thus was not the fruit of a seizure. The Court
explained that the case law is clear that such evidence is not
barred by the Fourth Amendment. See Hodari D., 499 U.S. at 629;
United States v. Wadley, 185 Fed. Appx. 137 (3d Cir. 2006). Cf
United States v. Fulani, 368 F.3d 351, 354 (3d Cir. 2004)
(Defendant forfeits privacy interest in property when he abandons

17

it).

The Court further held that, by the time Petitioner was tasered, Officer Caterino had more than sufficient probable cause to seize him, citing Valentine, 232 F.3d at 359 ("[W]hat [the defendant] did after he failed to comply with the police officers' orders can be considered in evaluating reasonable suspicion."). Therefore, the Court held that the search incident to that seizure was proper, and that the evidence obtained from the search was not barred by the Fourth Amendment. Accordingly, the Court found that no evidence obtained prior to the tasering of Petitioner was subject to suppression. Because the Court's decision in no way relied on the fact that the stop of Petitioner's vehicle was based on reasonable suspicion, evidence as to the reasonableness or legality of the stop would not have altered the Court's findings in any way. Likewise, because the facts upon which the Court relied were essentially not disputed, witness credibility was not an issue, so evidence as to Officer Caterino's credibility would not have had any impact.

The Court also denied Petitioner's request to suppress the statements made by Petitioner to Officer Caterino while he was being transported to UPMC Mercy Hospital. In so doing, the Court received evidence that Baldwin paramedic rescue technician Michael Dziki assessed Petitioner and checked his mental status to see if he was conscious, alert, and oriented. The Court,

based on an assessment of the "totality of all the surrounding circumstances," including "both the characteristics of the accused and the details of the interrogation," found that Petitioner's statements were voluntary. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). The Court further held that Petitioner had received the appropriate warnings pursuant to Miranda v. Arizona, 384 U.S. 436 (1966).

Although Petitioner now suggests that counsel should have employed an expert witness to rebut Mr. Dziki's testimony and establish that his statements were involuntary, he does not even attempt to establish that an expert would have so testified. To establish prejudice under Strickland, Petitioner cannot rely on mere speculation as to what the testimony would have been, but rather, must demonstrate what the actual testimony would be. See Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006).[8] Based on all of the above, there is no basis for finding a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different.

D. **Remaining Issues**

The remaining grounds raised by Petitioner are so lacking in

_____

[8]    Moreover, decisions as to which witnesses to call to testify are generally strategic decisions entrusted to counsel, and counsel need not call every suggested witness - only those likely to assist the case. See United States v. Merlino, 2 F. Supp. 2d 647, 662 (E.D. Pa. 1997). The Court need not address that issue here, since Petitioner cannot establish prejudice in any event.

specificity, so vague, and so conclusory, that little further
discussion is warranted. See United States v. Thomas, 221 F.3d
430, 437 (3d Cir. 2000); United States v. Dawson, 857 F.2d 923,
928 (3d Cir. 1988). A defendant must set forth sufficient facts
in support of the grounds alleged. See Thomas, 221 F.3d at 437-
38. Here, Petitioner makes numerous vague allegations, many of
which employ completely circular logic, that, in the end, do not
in any way establish ineffectiveness, much less prejudice. While
the Court will not discuss each of these vague contentions
individually, it will address a few issues briefly.

Petitioner raises several vague allegations regarding jury
selection, but fails to establish how counsel's actions impacted
the proceedings in any way. For instance, Petitioner avers that
"[c]ounsel failed in proper and appropriate challenge during Voir
Dire to which certain jurors displaying obvious prejudice,
including relationships with witnesses and members of law
enforcement (Juror 36)." [sic]  Doc. No. 136-1, Ground 14. While
he seems to limit "certain jurors" to Juror 36, he fails to
establish what specifically counsel failed to do and how he was
prejudiced. Indeed, as the Government points out, Juror 36 was
struck on a preemptory challenge and was not on the jury that
convicted Petitioner. Likewise, Petitioner states that "counsel
failed to effectively challenge and strike jurors that proved
outside of reasonable conditions set forth during Voir Dire thus

20

resulting in prejudicial bias . . . (Juror 88)." Id., Ground 17.
While Juror 88 was, in fact, on the jury, Petitioner does not
indicate why this juror was unsuitable or how this prejudiced him
in any way.

Petitioner similarly makes numerous vague contentions
regarding evidentiary matters. He argues that "[c]ounsel failed
to challenge the bias of key witness for the prosecution in
establishing prejudice through the exposure of witness
relationship to law enforcement." Id., Ground 19 (first). It is
unclear what Petitioner means by this, but it is clear that such a
vague claim can establish neither deficiency nor prejudice.
Likewise, he states, "Counsel failed in properly and effectively
representing the substantiation of certain evidentiary
documentation supporting Defendant's position to suppress
unfounded evidence promulgated through suppression hearing." Id.,
Ground 4. Not only does Petitioner fail to explain what he means
by failure to "substantiate" evidence, at no point does he explain
with any specificity what this evidence was or how he was
prejudiced by counsel's failure to substantiate it. To the extent
that this claim is a summary of his arguments regarding his
suppression motion, the Court has already addressed these issues
above.

Grounds 15 and 16 contend that counsel failed to challenge or
object to certain evidence that was not even admitted. In fact,

21

in regard to Ground 16, pertaining to video footage of the accident, counsel did object to this evidence, and the Court sustained her objection. This occurred not before the jury, but in Chambers. Moreover, Ground 24 claims that counsel failed to challenge evidence, specifically a magazine and bullets, when she did object to such evidence. The Court, however, overruled the objection and permitted the evidence to be introduced. See Doc. No. 125 at 5-6.

Petitioner's claims regarding communications with counsel are particularly vague. For instance, he claims, "Counsel for defense was deficient in performance to render effective and thorough communications to Defendant, and explain options and consequences associated with trial verses [sic] plea." Doc. No. 136-1, Ground 1. At no time does he establish what counsel failed to communicate, nor does he indicate that there is information that would have changed his decision to go to trial had he known of it.
Likewise, in the un-numbered section of his brief, Petitioner states that "[h]ad counsel for the defense more properly and effectively advised on the merits of the Plea Agreement or challenged such inconsistencies throughout the evidentiary review, the petitioners (Defendants) sentence would have been significantly reduced or eliminated all together." [sic] Id. at 25. He not only fails to specify what advice was not properly or effectively offered, he fails to explain how his sentence would

22

have been significantly reduced, much less eliminated, had he been better advised in regard to a proffered plea agreement.

As the Court stated above, it will not address each of the numerous vague claims contained in Petitioner's motion individually. The examples above demonstrate the inadequacy of such claims. Because there is no basis to Petitioner's vague and conclusory contentions, the Court finds that he has not and cannot establish that counsel was ineffective in these respects.

While the Court is conscious that Petitioner's filings were done pro se, and of the fact that the procedural rules regarding Section 2255 require defendants to bring every argument they may have in a single motion, the Court must take note of the number of completely unsubstantiated claims in Petitioner's motion. The reality in this case is that defense counsel was very vigorous in defending Petitioner; indeed, given the number of arguments that ran contrary to well-established case law raised by defense counsel, it could be argued that she was perhaps too vigorous. However, in any event, defense counsel went above and beyond in representing Petitioner, putting her own credibility on the line at times. Petitioner seems to treat counsel's failure to prevail on these issues as a failure to raise the issues in the first place, or, at least, to raise them properly. As the Court has illustrated throughout, the failure to prevail on an issue does not equate to ineffectiveness.

## III. **Conclusion**

For all of the above-stated reasons, Petitioner's motion is denied in its entirety. Further, this Court will not issue a certificate of appealability in this case. A certificate of appealability may issue under 28 U.S.C. § 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2). For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right, and a certificate of appealability should not issue in this action.

An appropriate Order will be issued.

Date:  February 14, 2013            s/Alan N. Bloch
                                     United States District Judge

ecf:    Counsel of record

cc:     Otto Harris, #30640-068
        FCI Elkton
        P.O. Box 10
        Lisbon, OH 44432